STATE of Utah, Plaintiff and Appellee,

v.

John Joseph THOMPSON, Defendant and Appellant.

No. 870276.

Supreme Court of Utah.

June 7, 1989.

G. Fred Metos, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Barbara Bearnson, Salt Lake City, for plaintiff and appellee.

HOWE, Associate Chief Justice:

Defendant John Joseph Thompson appeals from convictions of object rape and forcible sodomy, first degree felonies, in violation of Utah Code Ann. §§ 76–5–402.2 and –403 (1978, Supp.1988) and of forcible sexual abuse, a second degree felony, in violation of Utah Code Ann. § 76–5–404 (1978, Supp.1988). He contends that the trial court erred in denying his motion for a mistrial after the prosecutor made "improper and prejudicial statements" in closing argument. In the alternative, defendant asserts that he was improperly sentenced for three lesser included offenses when he was originally charged with only a single offense.

Evidence presented at trial showed that on March 21, 1986, the complainant was travelling from her home in Wausau, Illinois, to Reno, Nevada, to meet her boyfriend. Her method of travel was a form of hitchhiking which involved asking long haul truck drivers for rides either in person or via citizen's band radio. She met defendant in Wyoming, after the driver with whom she had been riding contacted defendant by radio, telling him that she needed a ride to Reno.

Defendant and complainant travelled from Wyoming toward Reno on Interstate 80, making stops to eat and to use the restroom. At about 11:00 p.m., they stopped at a truck stop in Lakepoint, Utah, where they ate, played some video games, and looked at merchandise in the gift shop. About two hours later, they went back to the truck, and defendant gave complainant several options as to what she could do, since he planned to spend the night there. He told her that she could find another ride, either in the truck stop or on the radio, she could remain in the front of the cab and watch television or she could lie down in the sleeper area of the truck with him.

She told him that she was very tired and wanted to lie down. Both entered the sleeping area, a space 32 inches wide, 35 inches high, and 80 inches long. At trial, they agreed in their descriptions of various bondage-type sexual activities in which they had engaged. Defendant claimed that the activities were consensual and testified that before performing each act he would describe what he was going to do and then obtain her consent to proceed. Complainant, on the other hand, testified that not only did she not want or agree to engage in any of the acts, but that she requested him to stop his actions but he refused.

Afterward, they both dressed and entered the truckstop to use the restrooms. She testified that he was waiting by the door when she exited the women's restroom, while he claimed that he was across the room talking to an attendant at the gift counter. The two then walked past several employees and customers of the truckstop so that defendant could use the men's room. She waited briefly outside the door of the men's restroom while he went inside. They then returned to the truck and travelled to Wendover, Nevada, a trip of about two hours. There, at a truck stop, he refueled the truck, and she went inside after telling him that she needed to use the restroom. Once inside, she informed a security guard that she had been handcuffed and sexually abused by defendant. Employees of the truck stop detained defendant until authorities were contacted.

Defendant first contends that the trial court erred in denying his motion for a mistrial after the prosecutor improperly argued in closing argument that defendant had failed to call the attendant at the gift counter to establish the truthfulness of his testimony. He told the jury:

Now, we talk about the lack of evidence. I think there is at least one lack of evidence that is real telling, real telling [sic] about the credibility of the defendant's theory of how this case happened.... After he had done all of those things to her he walks into that 76 station and goes over and talks to the lady at the gift shop while Rosa calmly, matter-of-factly, goes into the ladies' room. How come that lady from the gift shop isn't here?

In *State v. Andreason*, 718 P.2d 400, 402 (Utah 1986), this Court prescribed the standard for appellate review when the question of improper argument is raised:

> The standard applicable to reviewing alleged prejudicial remarks of counsel is whether the remarks call the attention of the jurors to matters they would not be justified in considering in determining their verdict. If so, then defendant must show that, under the particular circumstances of this case, the jurors were probably influenced by the improper remarks in reaching their verdict. *State v. Slowe*, Utah, 728 P.2d 110 (Utah 1985); *State v. Valdez*, 30 Utah 2d 54, 513 P.2d 422 (1973). Statements which suggest that a jury has an obligation to convict a defendant on some basis other than solely on the evidence before it are improper and beyond the broad latitude allowed in closing argument.

We are concerned here with a particular type of argument, one relating to inferences to be drawn from an opposing party's failure to produce a witness. This Court has previously addressed this issue in *State v. Smith*, 706 P.2d 1052, 1057–58 (Utah 1985). In that case, it was the defense who attempted to draw inferences from the failure of the prosecution to call a witness. The general rule, however, works both ways: a party may not comment on an opposing party's failure to produce a witness if the witness is equally accessible to both parties. In the instant case, the witness in question had no special relationship with either party that would make her less accessible to one than to the other. Furthermore, since the witness was an employee of a business located in Tooele County, and the case was prosecuted and investigated by the Tooele County authorities, one might infer that the witness was more accessible to the prosecution than to the defense attorney, who officed in adjoining Salt Lake County. Using the standard established in *Smith*, we find that the prosecutor's remarks drew the jury's attention to a matter they would not be justified in considering in reaching a verdict and were thus improper. A federal court correctly observed in a similar case: "[F]or the future when counsel, either for the prosecution or the defense, intends to argue to the jury for an inference to be derived from the absence of a witness, an advance ruling from the trial court should be sought and obtained." *Gass v. United States*, 416 F.2d 767, 775 (D.C.Cir.1969).

We next address the question of whether the improper remarks made by the prosecutor were prejudicial, i.e., whether the jurors were probably influenced by them. Defendant urges that because the improper remark came near the end of the prosecutor's argument, it may have had a stronger impact than if it had been inserted in the middle of a long discourse. In addition, because the evidence was evenly balanced (the only issue being which party was telling the truth), the improper remark may have caused prejudice where it would not if the evidence had been clearly in favor of the State. In his own closing argument, however, defendant chose to ignore the prosecutor's remark and made no attempt to ameliorate any possible effects. Furthermore, although defendant in this appeal presents us with a specimen instruction on missing witnesses from *United States v. Young*, 463 F.2d 934, 944 (D.C. Cir.1972), we do not understand him to assert that he requested that such an instruction be given to the jury and that the trial judge denied such a request.

After a careful review of the record, it appears that even if this absent witness had been called to testify, the most she could have contributed was whether defendant waited for complainant immediately outside the women's restroom or at the gift counter. Her contribution would thus seem to be somewhat tangential and not of great relevance, as there were other opportunities when complainant could have sought help (e.g., when defendant briefly left her alone outside the men's room). Furthermore, if the jurors were inclined to be influenced by this improper remark, the jury instructions that were given cured any potential error. The jurors were instructed that they were "to be governed solely by the evidence introduced in this trial" and were also instructed that defendant was "presumed innocent until he is proved guilty beyond a reasonable doubt."

. As this Court noted in *State v. Hutchison,* 655 P.2d 635, 636 (Utah 1982):

Reversal for error is not automatic.... "[W]e do not upset the verdict of a jury merely because some error or irregularity may have occurred, but will do so only if it is something substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a different result."

(Quoting *State v. Urias,* 609 P.2d 1326, 1329 (Utah 1980)); *see also State v. Tillman,* 750 P.2d 546 (Utah 1987). We do not find such a reasonable likelihood in this case.

■ Defendant's second contention is that he was improperly sentenced by the trial court for three lesser included offenses when he was originally charged with a single offense, of which the jury did not find him guilty. The information charged defendant with aggravated sexual assault, a felony of the first degree, in violation of Utah Code Ann. § 76–5–405 (1978, Supp.1988). One necessary element of aggravated sexual assault is an underlying sexual assault. That element can be met in eight different ways, and the prosecution, as is proper, listed in the information eight alternative theories, any one of which would satisfy the requirement of an underlying sexual assault. The eight ways were rape or attempted rape, object rape or attempted object rape, forcible sodomy or attempted forcible sodomy, or forcible sexual · abuse or attempted forcible sexual abuse. Each of these alternative ways could, in itself, be charged as a separate offense. In this instance, however, they were not charged as separate offenses, but were merely listed in the information as ways in which the requisite underlying sexual assault could have been committed.

One of the instructions given by the trial court to the jury, instruction no. 17, stated:

In the event you determine that the Defendant is not guilty of the crime of Aggravated Sexual Assault as charged in the Information, you may then consider whether Defendant is guilty *of any one of the following lesser included offenses:* Object rape, forcible sodomy, forcible sexual abuse, an attempt to commit *any one* of said lesser included offenses, or simple sodomy.

(Emphasis added.) Jury instruction no. 29 reiterated the option of choosing *one* "lesser included offense":

Your verdict in this case must be either:

1. Guilty of Aggravated Sexual Assault, a First Degree Felony, as charged in the Information; or

2. Guilty of *one* of the following lesser included offenses: Object rape or attempted object rape, forcible sodomy or attempted forcible sodomy, forcible sexual abuse or attempted forcible sexual abuse; or

3. Simple sodomy; or

4. Not guilty.

This being a criminal case, a unanimous concurrence· of all jurors ·is required to find a verdict. A written form for each of the above mentioned possible verdicts will be furnished to you. When your verdict has been found, the appropriate *form* [singular] must be signed and dated by your foreperson and then returned by you to this Court. When your verdict has been found, notify the bailiff that you are ready to report to the Court.

(Emphasis added.)

Rather than signing and returning the appropriate *form,* the foreperson signed and returned three forms. The forms showed defendant to be guilty of three of the lesser included offenses, object rape, forcible sodomy, and forcible sexual abuse. Over the objection. of defendant, the trial court sentenced him to a prison term on each of the three convictions, the terms to run concurrently.

■ We do not here need to decide and we do not decide whether a defendant who is charged in an information with a single offense can be found guilty and sentenced on more than one included offense. It is sufficient to observe that here the instructions to the jury authorized it to find him guilty only of one included offense. No objection was made to these instructions by the State or by defendant. That being so, they constitute the law of this case. The

State points out to us a memorandum in the record written by the prosecutor to the trial court at the time of sentencing on the question of whether defendant could be sentenced on all three of the lesser included offenses of which he was found guilty. In that memorandum, the prosecutor stated that during jury deliberations, the jury sent a written inquiry to the trial court which, according to the best recollection of the prosecutor, inquired as to how many of the lesser included offenses defendant could be found guilty. The prosecutor then stated that according to his recollection, the trial court, with the concurrence of counsel for both the State and defendant, sent back a written response indicating that any number or all of the lesser included offenses could be found by the jury.

■ Utah Code Ann. § 77–35–17(m) (1982, Supp.1988) provides that any written inquiry from the jury that is received by the court during deliberations is to be answered and copies of the inquiry and answer placed in the record. That was not done here, and consequently, we have no record to rely upon other than the unsupported statement made by the prosecutor in his memorandum referred to above. In view of this void in the record, we cannot give any consideration to this alleged written response to the jury. Furthermore, we doubt that it was ever the intent of the trial court in answering any inquiry from the jury to so radically contradict the written instructions which he had given.

■ Since defendant should have been found guilty of only one lesser crime, the jury should have been told to retire and reconsider its verdict and find him guilty either of aggravated sexual assault or of one, but not three, of the lesser crimes. Since that was not done, we affirm his conviction of object rape, which is one of the first degree felonies of which he was convicted, and vacate the other two convictions as surplusage, as we did under similar circumstances in *State v. Bradley*, 752 P.2d 874, 878 (Utah 1988) (as amended on rehearing), and in *State v. Hill*, 674 P.2d 96, 98 (Utah 1983). Justice Zimmerman, as stated in his concurring and dissenting opinion, would affirm all of the convictions.

Justice Stewart and Chief Justice Hall would vacate all convictions and remand for a new trial, as stated in Justice Stewart's opinion.

DURHAM, J., concurs.

ZIMMERMAN, Justice (concurring and dissenting):

I concur in all of Justice Howe's opinion except for that portion suggesting that defendant's convictions of forcible sodomy and forcible sexual abuse should be vacated. I would affirm all defendant's convictions.

Justice Howe would void the convictions on two of the three lesser included charges by raising an argument never advanced by defendant on appeal—that the written inquiry from the jury and the answer thereto were not included in the record, as required by Utah Rule of Criminal Procedure 17(m). Utah Code Ann. § 77–35–17(m) (1982). Even if it were error not to include the question and answer in the record, I can see no reason why we should reach out to raise this issue. As explained below, Thompson's counsel apparently made a calculated choice in waiving any right his client had to be convicted on only one lesser included offense; that choice appears to have redounded to his client's benefit. I see no reason to now permit him to attack the trial court's action taken as a result of his choice.

According to the prosecutor, when the jury was deliberating, it asked the court if it could find the defendant guilty of more than one of the lesser included offenses. The court, after conferring with both counsel and receiving their approval, informed the jury that it could convict defendant of any or all of the three lesser included offenses. As Justice Howe points out, this was inconsistent with the written instructions given at the beginning of deliberations, but it was certainly within the power of defense counsel to waive any rights defendant had in those instructions. The jury then returned a not-guilty verdict on the greater offense, aggravated sexual assault, and guilty verdicts on the three lesser included offenses.

During oral argument before this Court, defense counsel did not deny that he had

consented to the trial court's telling the jury that it could convict defendant of any or all of the lesser included offenses. He did not attempt to raise the issue advanced by Justice Howe; rather, he raised another rather weak argument based on statutory construction, one that Justice Howe does not even mention. I would force defense counsel to stick with the choice he made at trial. Defense counsel's actions at trial are certainly understandable. The question from the jury indicated that it was thinking of a possible compromise verdict. The instructions had not given the jury the option of convicting on more than one lesser included offense. However, defense counsel might reasonably have decided that it was better to acquiesce in the court's answer to the jury's inquiry, thereby allowing his client to be convicted of all three lesser included offenses, none of which carried a minimum mandatory prison sentence, rather than the one greater offense, which did. This gambit worked, and the client was not convicted of the greater charge. The advantage to Thompson is dramatic. As Thompson's reply brief points out, Board of Pardon guidelines show that Thompson would likely spend seven years three months in prison after conviction for the three lesser included offenses. In contrast, conviction of the greater offense carries a presumptive minimum mandatory term of ten years. Utah Code Ann. §§ 76–5–405(2), 76–3–201(5) (Supp.1988).

Because I conclude that defense counsel consciously waived any rights defendant had to be convicted of only one of the lesser included offenses, I would affirm all three of the lesser included convictions.

STEWART, Justice (dissenting):

The defendant was charged and tried for a single crime. The jury was instructed on the elements of aggravated sexual assault and on the elements of three other crimes, each of which was a lesser included offense of aggravated sexual assault but was not a lesser included offense of the others. The jury was instructed that it could return a guilty verdict on only one of the lesser offenses. Nevertheless, it returned verdicts finding the defendant guilty of three lesser included offenses, object rape, forcible sodomy, and forcible sexual abuse. The trial judge sentenced on.all three convictions.

Since it is clear, and indeed uncontested, that the defendant should have been found guilty of only one crime, the jury should have been told to reconsider its verdict and find the defendant guilty either of aggravated sexual assault or of one, but not all three, of the lesser crimes.

I depart from the majority opinion because I think there is no rational basis whatsoever for deciding which of the three lesser offenses the jury would have selected had it selected only one. In my view, therefore, the case should be reversed and remanded for a new trial so that a jury, and not this Court, decides which crime the defendant is guilty of.

HALL, C.J., concurs in the dissenting opinion of STEWART, J.