**STATE of Utah, Plaintiff and Appellee,**

v.

**Bryan Jay STEPHENS, Defendant and Appellant.**

No. 960452–CA.

Court of Appeals of Utah.

Oct. 9, 1997.

Robert K. Heineman and Robin K. Youngberg, Salt Lake City, for Defendant and Appellant.

Jan Graham and Barnard N. Madsen, Salt Lake City, for Plaintiff and Appellee.

Before WILKINS, BENCH and BILLINGS, JJ.

## OPINION

BENCH, Judge:

Defendant Bryan Stephens was convicted of two counts of unlawful possession of a controlled substance, one count a third-degree felony and the other a class B misdemeanor, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (1994), and of unlawful possession of drug paraphernalia, a class B misdemeanor, *see* Utah Code Ann. § 58–37a–5 (1994). He appeals his convictions, arguing that the trial court erred when it denied his motion to suppress and that the prosecutor made an improper, prejudicial remark in closing argument. We affirm.

## BACKGROUND

While driving his car in Salt Lake County, defendant turned left at an intersection without signaling. Having observed the improper turn, Deputy David Broadhead pursued defendant's car and activated his overhead lights to signal defendant to stop. As he pursued the vehicle, Deputy Broadhead saw defendant make several "stuffing" movements toward the passenger side of the front seat. When defendant finally pulled over about two blocks away, Deputy Broadhead saw him make another similar movement toward the same area of the car. The officer approached the car and asked defendant, who appeared extremely nervous, why he had repeatedly moved toward the right side of the front seat. Defendant replied, "I didn't know that I was." When the officer asked defendant whether he had concealed any weapons or contraband under the seat, defendant replied, "No, you're free to look if you want." The officer explained to defendant that, because defendant appeared nervous and had made several "stuffing" movements toward the right side of the front seat,

he was concerned that defendant had hidden a weapon or contraband in that area. The officer then said that he would like to "check" under the front seat, and defendant replied, "Go right ahead."

Deputy Broadhead looked under the front passenger seat and discovered a brown leather case sticking out from under the seat. When the officer opened the case and discovered drugs and drug paraphernalia, he confronted defendant. Defendant said that the case was not his and that he did not know why it was in his car. The officer then arrested defendant for unlawful possession of the controlled substances and drug paraphernalia.

Before trial, defendant moved to suppress the evidence found in the leather case, arguing that he had not consented to the officer's search of the case. The trial court denied the motion to suppress. At defendant's trial, the leather case and its contents were admitted into evidence. In closing argument, the prosecutor commented to the jury that even though there was no apparent "victim" of defendant's crime, "you all know the impact that this type of offense has." The trial court sustained defense counsel's objection to the comment and immediately gave a cautionary instruction to the jury. The jury found defendant guilty on all counts.

On appeal, defendant argues that the trial court improperly denied his motion to suppress. Specifically, he contends that the scope of his consent did not extend to the contents of the leather case. On our review of the trial court's denial of defendant's motion to suppress, we review the trial court's factual findings for clear error and its conclusions of law for correctness. *See State v. McGrath*, 928 P.2d 1033, 1036 (Utah Ct.App. 1996). Defendant further argues that the prosecutor's comment in closing argument was both improper and prejudicial. The Utah Supreme Court has established the following test to determine whether comments of counsel merit reversal in criminal cases: "did the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances

of the particular case, probably influenced by those remarks." *State v. Valdez*, 30 Utah 2d 54, 60, 513 P.2d 422, 426 (1973).

## ANALYSIS

### I. Scope of Consent

■ Under the Fourth Amendment,[1] a police officer may conduct a warrantless search when the suspect has properly consented to the search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973). Defendant contends, however, that the scope of his consent did not extend to the contents of the leather case. He emphasizes that he gave Deputy Broadhead permission only to "look" under the front seat, and that the officer never asked for permission to "search," but only to "check" under the front seat. Defendant argues that his consent to "look" or "check" for weapons or drugs did not reasonably include permission to look for those items in containers found under the seat. We therefore must decide whether defendant's authorization to "look," and Deputy Broadhead's failure to ask permission specifically to "search," effectively excluded the contents of the leather case from the scope of defendant's consent.

The State urges that *State v. Castner*, 825 P.2d 699, 705 (Utah Ct.App.1992), is dispositive of defendant's arguments regarding scope of consent. In *Castner*, the officer, who had stopped the defendant for speeding, asked the defendant "if he could look" for drugs in the car, and the defendant "said he could look." *Id.* at 701. Because the record did not reveal that the defendant had "limited the scope of consent," this court rejected the defendant's argument that he had not given the officer permission to look in closed containers. *Id.* at 705. Although factually similar to this case, *Castner* did not directly address the issue before us: whether the effect of defendant's consent to "look" or "check," rather than to "search," was to exclude the contents of containers from the scope of his consent. We therefore treat

*Castner* as consistent with our analysis but not as controlling authority on the narrow issue here presented.

■ The United States Supreme Court has held that "[t]he Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile." *Florida v. Jimeno*, 500 U.S. 248, 249, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). Although a suspect may limit the scope of consent, if the officer could reasonably understand the consent to extend to a particular container, "the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.* at 252, 111 S.Ct. at 1804.

In upholding the warrantless search of a closed paper bag found in the defendant's car, the *Jimeno* Court noted that the defendant did not place any limits on the scope of his consent and that the officer had told the defendant "he would be looking for narcotics in the car." *Id.* at 251, 111 S.Ct. at 1804. The Court further noted that "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container." *Id.* Finally, the Court rejected the defendant's argument that police officers "must separately request permission to search each container." *Id.* at 252, 111 S.Ct. at 1804.

Therefore, under *Jimeno*, we need not consider the limiting effect that defendant may have subjectively attached both to his own use of the word "look" and to Deputy Broadhead's request to "check" under the front seat. *See United States v. Cucci*, 892 F.Supp. 775, 792 (W.D.Va.1995) (noting, under *Jimeno*, subjective beliefs of defendant are irrelevant in determining scope of consent); *Ware v. United States*, 672 A.2d 557, 565 (D.C.1996) (same). In this case, Deputy Broadhead told defendant that he was concerned that defendant had hidden a weapon or contraband under the front seat and that

---

1. Although defendant's brief includes citation to article I, section 14 of the Utah Constitution, defendant does not seek a separate analysis of this issue under the state constitution. We therefore limit our discussion to the Fourth Amendment. *See State v. Carter*, 812 P.2d 460, 462 n. 1 (Utah Ct.App.1991).

he would "like to check under that area." Moreover, Deputy Broadhead could reasonably expect defendant to know that " '[c]ontraband goods rarely are strewn across the trunk or floor of a car.' " *Jimeno*, 500 U.S. at 251, 111 S.Ct. at 1804 (citation omitted). Finally, defendant did not place any limits on the scope of his consent. *See id.* at 252, 111 S.Ct. at 1804. Therefore, considering the scope of defendant's consent under an objective standard, we conclude that Deputy Broadhead could have reasonably believed that defendant's general consent to "look" or "check" under the front seat for weapons or drugs extended to the contents of the leather case. *See United States v. McSween*, 53 F.3d 684, 688 (5th Cir.) (stating, even if officer had requested only to " 'look in' " suspect's vehicle, request would have "effectively asked for a general consent to search"), *cert. denied*, —— U.S. ——, 116 S.Ct. 199, 133 L.Ed.2d 133 (1995); *see also Castner*, 825 P.2d at 705 (upholding search of zipped pouch in car because defendant gave general consent when officer "asked if he could look" for drugs).

Defendant relies on *State v. Genovesi*, 909 P.2d 916 (Utah.Ct.App.1995), and *People v. Thiret*, 685 P.2d 193 (Colo.1984), to support his argument that Deputy Broadhead's search of the leather case exceeded the scope of his consent. The searches in those cases, however, were far more intrusive than Deputy Broadhead's limited search of the leather container. *See Genovesi*, 909 P.2d at 920 (holding, as a matter of law, general consent given in response to officer's request to search for evidence did not authorize officer "to tear out part of a wall or cut away a piece of carpet"); *Thiret*, 685 P.2d at 201 (holding, in pre-*Jimeno* case, officers' forty-five minute search of piles of clothing and contents of drawers, boxes, and other closed containers in defendant's house exceeded consent to " 'look around' "). We therefore decline to apply the reasoning of *Genovesi* and *Thiret* to the limited search in this case. The trial court properly denied defendant's motion to suppress.

## II. Comments of Prosecutor

During his closing argument at defendant's trial, the prosecutor made the following remarks to the jury:

You may say, "Well, yeah we have got Mr. Stephens charged with a crime. There is no victim here with regard to those offenses.["] We have only taken roughly two hours to present the case to you today[.] [W]hy all of the big fuss and bother to occupy your time for a day? Well, you all know the impact that this type of offense has.

Defense counsel promptly objected to the prosecutor's comment about the "impact" of the offense, and the trial court sustained the objection. The trial court then immediately cautioned the jury that the "verdict in this case, of course, must be based solely and totally upon the evidence that is introduced during this particular case and ... you must not be swayed by public opinion or public feeling. Your decision must be based solely upon the evidence introduced during this case."

■ On appeal, defendant argues that the prosecutor improperly commented on the "impact" of the offense and that, because the prosecution produced only "scant evidence" linking him to the leather case, the comment may have influenced the jury's verdict. We disagree. Without addressing whether the prosecutor's brief comment was improper, we conclude that defendant was not prejudiced by it.

■ Defendant correctly points out that the strength of the evidence supporting the conviction is an important factor in determining prejudice. *See State v. Andreason*, 718 P.2d 400, 403 (Utah 1986) ("[I]n a case with less than compelling proof, we will more closely scrutinize the prosecutor's conduct."). In *State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993), however, the supreme court stated that, in determining whether a defendant is prejudiced by an improper remark, "we need not rely solely on the evidence supporting [the] offense." In *Dunn*, the prosecutor in closing argument improperly cautioned the jury to "be mindful of its obligation to society in deciding whether to return a guilty verdict." *Id.* at 1224. Although the prosecution had not produced strong evidence of defendant's guilt, the supreme court went on to

affirm defendant's conviction of reckless manslaughter. *See id.* at 1224–25.

The court relied on several factors in reaching its conclusion. First, after the prosecutor made the improper remark in closing argument, defense counsel responded by reminding the jurors "that their duty to society must be offset by being fair to defendant." *Id.* The supreme court concluded that defense counsel's response "helped to ameliorate the harmful effect" of the improper comment. *Id.* Moreover, the supreme court relied on the trial court's instruction that admonished the jury to ignore public opinion, to dispassionately consider the evidence, and to reach a just result despite the consequences of the verdict. *See id.* Finally, the supreme court emphasized that the trial court instructed the jurors "not to consider the statements of counsel as evidence." *Id.* Therefore, in light of defense counsel's ameliorative remarks and the trial court's cautionary instructions, the court concluded that, "on balance," the improper remark did not prejudice the defendant. *Id.*

Similarly, the trial court's immediate cautionary instruction to the jury in this case "helped to ameliorate" the harmfulness of the prosecutor's remark. *Id.* Also, in its general instructions cautioning the jury to ignore public opinion or public feeling, the trial court used the same language relied upon in *Dunn. See id.* Finally, the trial court instructed the jury to disregard statements of counsel that did not conform to their own recollections of the evidence. *See id.* Therefore, like the supreme court in *Dunn,* we cannot say that, under the circumstances of this case, the jury was probably influenced by the prosecutor's remark. *See id.* at 1224.

## CONCLUSION

Deputy Broadhead reasonably concluded that defendant's consent to "look" or "check" for weapons or drugs under the front seat included permission to look inside the leather case. We conclude that the trial court properly denied defendant's motion to suppress. We also conclude that defendant was not prejudiced by the prosecutor's remark in closing argument.

Defendant's convictions are therefore affirmed.

WILKINS, Associate P.J., and BILLINGS, J., concur.